IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | 1:13-CR-379-3 (TCB) (AJB) |
| ) | |
| JONG SUNG KIM, ) | |
| ) | |
| aka "JOHN KIM" ) | |
| _____ ) | |

### JOHN KIM'S
### MOTIONS IN LIMINE

COMES NOW, the Defendant JONG SUNG KIM, by and through the undersigned attorney and files the following motions in limine.

**I) REQUEST FOR DISCLOSURE TO THE JURY OF THE TRUE IDENTITIES OF "VICTIM #1"AND THE UNDERCOVER FBI AGENT.**

**A)** John Kim is charged in this case with one count of conspiracy and three counts of aiding and abetting an extortion of a person currently listed in the indictment as "Victim #1." The government's case against Mr. Kim primarily relates to allegations that he participated in the extortion of "Victim #1." The true name of this person is well known to John Kim and to the other defendants in this case. The Defendant asks that the government be directed to call and refer to "Victim #1" by his true and legal name in open court. To do otherwise creates the unfair and prejudicial appearance and suggestion of dangerousness of the part of

John Kim, the Defendant on trial.

**B)** On a similar note, the Defendant also objects to the undercover FBI agent being allowed to testify without disclosure of his full name and identity. At a suppression hearing on November 16, 2015, the Magistrate Judge conducted an evidentiary hearing on Mr. Kim's motion to suppress statements. (Doc. 276, hearing transcript). The government called an undercover FBI agent, referred to in the investigative reports as "UCE-1." At the suppression hearing, over objection, the government was allowed to hide the identity of this agent and refer to him in open court only as "Agent." (Doc. 276-9).

The Defendant asks that the government be directed to call and refer to the undercover FBI "Agent" by his true and legal name. To do otherwise creates the unfair and prejudicial appearance and suggestion of dangerousness on the part of John Kim, the Defendant on trial.

**C) Request for Information, Jenks Material and Transcripts of Prior Testimony from the Undercover FBI Agent.**

The person known as "Agent" is a federal undercover agent who played an *active* and *crucial* role in the alleged criminal activity included in the charged conspiracy, Count One. The defense must also be prepared to cross-examine "Agent" at trial, and the defense must also determine whether he should be called

as a defense witness. Disclosure of relevant information about "Agent" is "required to ensure a fair trial." *United States v. Rutherford,* 175 F.3d 899, 902 (11th Cir. 1999); *United States v. Fischer,* 531 F.2d 783, 787 (5th Cir. 1976).

John Kim requests disclosure and production of the following information that is critical to his defense:

1. "Agent's" full legal name, background and training as a Government agent,

2. The names he used to testify in other cases,

3. The style, jurisdiction and case number of other cases that were prosecuted in federal court in which "Agent" was involved as an undercover agent,

4. Disclose "Agent's" compensation for services as an undercover agent, specifically including any bonuses or percentages he received based on the outcome of his investigations,

5. The defense also seeks productions of transcripts, if they exist, from testimony given by "Agent" in prior trials within the last five (5) years.

A fundamental task in preparing to cross-examine "Agent" is obtaining information about his background and transcripts of his prior testimony in other

cases.  Generally, the Government must promptly produce documents and physical evidence "material to preparing the defense." Fed.R.Crim P. 16(a)(1)E)(I); *Brady v. Maryland,* 373 U.S. 83 (1963).  The Government must also promptly produce exculpatory evidence and evidence which could be used to "impeach the credibility of an important prosecution witness." *United States v. Jordan*, 316 F.3d 1215, 1226 (11th Cir. 2003), citing *Giglio v. United States*, 405 U.S. 150 (1972).

The Government must produce witness statements and other Jencks material at trial. 18 U.S.C. § 3500.  However, the district court must require earlier production of the same and comparable material if "the defendant demonstrates that it is material to the preparation of his defense." *Jordan, supra,* at 1250. By the same logic, the Government must also identify potential witnesses if the disclosure may be "material to preparing the defense." Such disclosures must be made sufficiently prior to trial for defense counsel to use the information to locate witnesses and adequately prepare the defense. *Roviaro v. United States*, 353 U.S. 53 (1957); *United States v. Rutherford*, 175 F.3d 899 (11th Cir. 1999).

WHEREBY, JOHN KIM requests that the identities of "Victim #1"and the undercover FBI agent be disclosed to the jury, and that the government be directed to provide him with the above-listed materials in advance of trial.

4

**III) OBJECTIONS TO ADMISSION OF OPINION EVIDENCE UNDER RULES 701 OR 702 AND THIRD-PARTY HEARSAY THROUGH "INTERPRETATION" OF THE GOVERNMENT'S RECORDINGS (BEYOND THAT OF LANGUAGE TRANSLATIONS FROM KOREAN TO ENGLISH).**

The government will seek to introduce various audio-recordings of conversations, some which include the Defendant and some which were recorded after John Kim was no longer in contact with the alleged co-conspirators (after January 2010). The Defendant anticipates that lay witnesses or federal agents may testify about the contents of these conversations between various under-cover agents and alleged co-conspirators including Mr. Kim. Experience teaches that these government witnesses will be tempted to color or elaborate upon the recorded evidence with opinions about statements made by other people, including Mr. Kim, and about actions that were taken by other people, and their underlying motives. The classic question is - "What did he mean when he said that ?" Such testimony will presume to know the mind and intent of the Defendant, or others, and will invade the province of the jury as it decides the ultimate issue of fact. Such opinion testimony can be extremely prejudicial to the Defendant if presented to the jury. Moreover, such testimony could only be admitted as expert testimony as it would be based on the "specialized knowledge" of the witness. Fed.R.Evid. 702. Any resulting prejudicial error after admitting such testimony as a lay

opinion will be impossible to cure once the jury has heard it.

The recordings speak for themselves and are the best evidence of what was said by the speakers. Here, the recordings are understandable without explanations or opinions from lay witnesses or federal agents, other than the language translations from the Korean language to English. Admittedly, a witness may sometimes need to explain "coded or 'code-like' conversations, … (but) the interpretation of clear conversations is not helpful to the jury, and thus is not admissible under" Federal Rule of Evidence 701 or 702. *United States v. Dicker*, 853 F.2d 1103, 1109 (3rd Cir. 1988).

Mr. Kim submits that the lay witnesses and agents should refrain from asserting any opinions about what various recorded statements meant or where intended to mean unless the Court deems a specific opinion is admissible. Any proposed lay opinion should be presented in advance outside the presence of the jury so the Court may make a determination as to whether the opinion is admissible.

Such opinion testimony is also inadmissible here as Rule 702 expert testimony, when the government has failed to meet the disclosure requirements. A witness "qualified as an expert" may testify as to opinions that are based on specific criteria. However, the party utilizing an expert witness must disclose

6

specific information about the expert's qualifications and opinions. Fed.R.Evid. 702; Fed.R.Crim.P. 16 (a)(1)(G). No expert witness has been identified in this case.

WHEREBY, John Kim asks the Court to direct to government to not elicit opinion testimony about the contents of recordings and what the speaker *meant* when he said something. The Defendant asks that the recordings be allowed to speak for themselves, without retroactive retrospection.

## IV) REQUEST FOR PRODUCTION OF PSR's OF TESTIFYING COOPERATORS.

John Kim seeks authorization from the Court for limited disclosure of the contents of the pre-sentence report of any co-defendants or other persons awaiting sentencing or having been sentenced who will testify against him at trial. EUGENE CHUNG, ATHITH VORASITH and possibly other testifying codefendants have pled guilty in this case and are awaiting sentencing, or Rule 35 re-sentencing, at the time of trial of this case. As the Court is well aware, pre-sentence investigation reports are prepared by the probation office of each Federal District to assist the Court in sentencing defendants. *See*, Federal Rules of Criminal Procedure - Rule 32( c). The reports (PSR's) contain information on the circumstances surrounding the offender's crime and on the offender's background,

including the offender's version of the offense.  *See* generally, Fennell and Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Pre-sentence Reports in Federal Courts*, 93 Harv.L.Rev. 1613, 1621-1630 (1980).  Additionally, in this case the PSR's contain statements and findings relating to drug quantity which likely will be contested by the Defendant at his trial.

The United States Probation Office has prepared PSR's for the Court, with respect to several testifying codefendants or alleged coconspirators.  These reports have been disclosed to the government.  Within such reports, in the portion relating to any adjustments for acceptance of responsibility will be a recitation of the defendant's version of his offense behavior.  Within such report (in part B- Defendant's criminal history) will be detailed recitation of the co-defendant's criminal history and a description of an offenses of which the co-defendants was or were convicted or the facts relating to an arrest.  Within such report (in Part C- Offender Characteristics) will be any information relating to the co-defendants mental and emotional health and any substance abuse, and the co-defendants' employment history record.

It is probable that the co-defendant's offense conduct statement, and Parts B and C of the pre-sentence reports of the convicted co-defendants contain potential *Brady* or *Giglio* information.  Under the Rules of this Court, the contents of pre-

sentence reports are generally confidential and not subject to disclosure. In order to avoid any potential claim of the suppression of the *Brady/Giglio* material, the Defendant seeks authorization to disclose (1) that portion of Part A of the report which contains any recitation of the codefendants' version of the offense conduct and (2) Parts B and C of each pre-sentence report to the undersigned attorney for Mr. Kim.

The granting of such authorization will avoid any necessity for the Court to have make an *in camera* examination of the pre-sentence reports. Although presentence reports, which are in the possession of the Court or the Probation Officer, are not generally discoverable, if the report has been disclosed to the Government, then it is discoverable when it contains *Brady* material. *United States v. Trevino,* 556 F. 2d. 1265, 1271 n.7 (5th Cir. 1977). As the presentence reports were disclosed to the Government prior to trial, Mr. Kim seeks discovery in accordance with the Court's pre-trial order and applicable law.

Rule 32( c) is silent as to disclosure of pre-sentence reports to a third party. However, in *United States v. Figurski*, 545 F.2d 389, 391 (4th Cir. 1976), the Fourth Circuit held that disclosure of a pre-sentence report to a third party should be made where the lifting of confidentiality is required to meet the ends of justice. The *Figurski* Court went on to conclude that if the report contains exculpatory

material, that portion of the report must be disclosed. In addition, if the report contains material which could be used to impeach the witness, disclosure is required where there is a reasonable likelihood that such information would affect the trier of fact.  The Seventh Circuit in *United States v. Anderson*, 724 F.2d 596, 598 (7th Cir. 1984), stated that when a defendant suspects that a witness's presentence report contains impeachment material, he should request the trial court to make an *in camera* examination of the report. The Court in *Anderson* held that if it is found that there is any impeachment material in the report, this information should be revealed to the Defendant as well.

In the alternative, Mr. Kim asks this Court to conduct an *in camera* hearing to determine the disclosable contents of the pre-sentence reports.


WHEREBY, JOHN KIM asks that his motions in limine be GRANTED and

that he be provided the above requested relief.

Dated:  This 7th day of February, 2017.

Respectfully submitted,

*s/ L. Burton Finlayson*

_____
L. BURTON FINLAYSON
Attorney for JONG SUNG KIM
Georgia Bar Number: 261460

LAW OFFICE OF
L. BURTON FINLAYSON
931 Ponce de Leon Avenue, NE
Atlanta, Georgia 30306
(404) 872-0560

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing Motions in Limine with the Clerk of Court using the CM/ECF system which will automatically send email notifications of such filing to the following:

>Mr. John Ghose
>Assistant United States Attorney
>600 Richard B. Russell Building
>75 Spring Street, S. W.
>Atlanta, Georgia  30303.

DATED:  This 7th day of February, 2017.

*s/ L. Burton Finlayson*

_____
L. BURTON FINLAYSON
ATTORNEY FOR JONG SUNG KIM
State Bar Number: 261460